UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-23572-CIV-MORENO

SECURITIES & EXCHANGE COMMISSION,

    Plaintiff,

vs.

PEDRO FORT BERBEL, FORT
MARKETING GROUP, LLC, and SIBADES
LLC (Relief Defendants),

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

The United States Securities and Exchange Commission filed this action alleging that Fort Marketing Group, LLC and Pedro Fort Berbel violated anti-fraud and registration provisions of the federal securities laws. Defendants subsequently moved to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a valid claim for relief. For the reasons discussed below, Defendants' motion to dismiss is denied.

### I. Statement of Facts

Fort Marketing Group is a defunct Florida limited liability company that maintained its principal place of business in Sunrise, Florida. Pedro Fort Berbel—a citizen of Spain—was the sole member of Fort Marketing Group. He maintained residences in Florida and Spain during the relevant time period.

The Complaint states that Fort Marketing Group and Berbel operated at least three separate online businesses—MLM Shop[1], The Business Shop[2], and Fort Ad Pays[3]—purporting

---

[1] Located at mlmshop.net.
[2] Located at tbsbusiness.com.
[3] Located at fortadpays.com.

to provide legitimate advertising services. Defendants used these businesses and their corresponding websites to sell certain investment products collectively referred to as "Ad Packs." Defendants solicited investors to purchase Ad Packs through promotional materials and videos on the businesses' websites, and touted the businesses as successful online advertising and marketing companies.

Defendants marketed the Ad Packs as profit-sharing investment vehicles designed to "share real advertising profits [with] everyday folk." To purchase an Ad Pack, an individual had to first become a member and pay the membership fee. The website materials stated that purchasers of each of these Ad Packs would share in the purported advertising businesses' profits and would begin accruing promised returns almost immediately.

Websites and promotional videos for two of the businesses—The Business Shop and MLM Shop—referred to Ad Packs as "guaranteed plans" and listed them at various prices from $100 to $50,000. For example, The Business Shop and MLM Shop offered "Bronze" plans for $1,000 and "Gold" plans for $4,000. Defendants promised purchasers of either plan a 25% return in 30 days. The websites instructed Ad Pack purchasers to email info@mlmshop.net for wire instructions, which directed purchasers to wire funds to a specific bank account held in the name of The Business Shop LLC. The Business Shop LLC had only one managing member: Berbel.

The third business—Fort Ad Pays—offered a similar Ad Packs for as little as $1 with stated returns as high as 120%. Unlike the Ad Packs sold by The Business Shop and MLM Shop, the Ad Packs on Fort Ad Pays' website lacked a specified maturity date; rather, Fort Ad Pays claimed that its Ad Pack maturities depended on the business's daily profits.

Fort Ad Pays claimed to have "a traditional business model" and stated that Ad Pack purchasers "get paid from profits and not from money that will be received from future payments." The website materials noted that the company was "set up to share real advertising profits [with] everyday folk and businesses" and they informed purchasers that greater daily profits for the company resulted in a larger proportional share for investors. According to the website, "[t]h more sales for ad services the more everyone can receive." Finally, the website

2

provided tutorial videos showing investors how to purchase Ad Packs using bank transfers and third-party payment processors.

The Commission alleges that between July 2014 and February 2016, Defendants raised approximately $38 million from Ad Pack purchasers located in the United States and elsewhere. Each of the almost 12,000 individual deposits and wire transfers received during that period routed funds into one of seven bank accounts held at five *domestic* banks. All seven bank accounts were held in the name of, or controlled by, Fort Marketing Group or Berbel.

Contrary to Defendants' representations, not one of the three businesses had a viable source of revenue. It received income solely from investor membership fees and the sale of Ad Packs. Defendants diverted approximately $4.3 million of these investor funds into personal bank accounts held in the name of Berbel and members of his family. Berbel used at least $1.25 million to purchase his Florida home and $22,000 more to pay taxes on that property. Defendants also used investor funds for the following expenses: (i) $737,000 for private jet charters; (ii) $401,000 for jewelry (recorded as a "business investment"); (iii) $78,000 for automobile expenses; (iv) $10,000 for personal care and cosmetic surgery; (v) $300,000 for residential construction in Colombia; and (vi) $177,000 for online gambling. Berbel liquidated all seven bank accounts associated with the allegedly fraudulent advertising businesses by March 2016 and sold his Florida home by March 2017.

## II. Motion to Dismiss Standard

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover,

"[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead the circumstances constituting fraud with particularity. In considering a motion to dismiss for failure to plead fraud with particularity, however, courts must also keep in mind the notice pleading standard set forth in Rule 8(a). Courts "must be careful to harmonize the directives of Fed. R. Civ. P. 9(b) with the broader policy of notice pleading." *SEC v. Physicians Guardian Unit Inv. Trust ex rel. Physicians Guardian, Inc.*, 72 F. Supp. 2d 1342, 1352 (M.D. Fla. 1999) (citing *Friedlander v. Nims*, 755 F.2d 810, 810 (11th Cir. 1985)). According to the Eleventh Circuit, "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)). Finally, Rule 9(b)'s requirements apply to actions brought by the SEC. *See, e.g., SEC v. Dunlap*, No. 01-8437-CIV, 2002 WL 1007626, *2 (S.D. Fla. March 27, 2002).

### III. <u>Discussion</u>

#### A. <u>Defendants' Arguments</u>

Defendants contend that the Court should dismiss all or part of the Commission's Complaint for four reasons. First, they assert that the relevant transactions occurred outside the

United States between only foreign investors, and argue that this extraterritoriality leaves the Court without subject matter jurisdiction over the activities in the Complaint. Second, Defendants contend that the Court must dismiss the claim for injunctive relief because the Commission failed to show a reasonable likelihood that Defendants will commit a future securities law violation. Third, they characterize the Complaint as an improper "shotgun" pleading that the Court must dismiss. Fourth, Defendants suggest that claims against Berbel in his individual capacity fail because the Complaint references only conduct Berbel took as an officer and director of Fort Marketing Group. None of these arguments, however, warrants dismissal of the Complaint.

## B. The Federal Securities Laws Apply to the Transactions at Issue.

Defendants first assert that because the relevant transactions occurred outside the United States and involved only foreign investors, this Court lacks subject matter jurisdiction over the activities in the Complaint. In *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), the Supreme Court addressed the extraterritorial reach of federal securities laws. To begin, it noted that extraterritoriality does not bear on subject matter jurisdiction; rather, it concerns whether the federal securities laws apply to particular conduct. *See id.* at 254. Because Defendants' extraterritoriality argument challenges the merits rather than the tribunal's power to hear the case, the Court may address whether the federal securities laws apply to Defendants' activities.

The Supreme Court in *Morrison* stated that federal securities laws apply to domestic purchases or sales of securities not registered on domestic exchanges. *Id.* at 268. Purchases and sales take place when and where "the parties become bound to effectuate the transaction." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012); *see also Qail Cruises Ship Mgmt. v. Agencia Viagens CVC Tur Limitada*, 645 F.3d 1307, 1310 (11th Cir. 2011). Thus, the federal securities laws apply to transactions where "the purchaser incurred irrevocable liability within the United States to take and pay for a security, or [] the seller

incurred irrevocable liability within the United States to deliver a security." *Absolute Activist*, 677 F.3d at 68.

The Commission alleges that investors purchased Ad Packs by wiring money to one of Defendants' seven U.S.-based bank accounts. It contends that at least some of these investors were located in the United States. Based on those allegations, many of transactions at issue involved a domestic purchase, and all of them involved a domestic sale. Accordingly, the federal securities laws referenced in the Commission's Complaint apply to Defendants' allegedly fraudulent conduct.

## C. The Commission Pleads a Valid Claim for Injunctive Relief.

Next, Defendants argue that the Commission cannot maintain its claim for injunctive relief because it failed to allege sufficient facts establishing a reasonable likelihood that Defendants will violate securities laws in the future. However, Courts in this district hold that allegations of past securities law violations give rise to "an inference that future violations may occur." *S.E.C. v. Warner*, 652 F.Supp 647, 650 (S.D. Fla. 1987). Because the Commission describes in detail Defendants' conduct that purportedly violated federal securities laws, it has likewise set forth sufficient allegations to survive Defendants' motion to dismiss its claim for injunctive relief. *See id.*

## D. The Complaint is not a Shotgun Pleading.

As with the previous two arguments, Defendants' characterization of the Complaint as a shotgun pleading likewise fails. In *S.E.C. v. City of Miami, Fla.*, 988 F. Supp. 2d 1343 (S.D. 2013), Judge Altonaga rejected a similar "shotgun pleading" challenge where "[e]ach count [did] not incorporate every preceding allegation, including paragraphs of other counts, but rather . . . [incorporated] only the general allegations contained in paragraphs 1 through 115." *Id.* at 1354. The Commission's Complaint proceeds in the same manner with even fewer general allegations. Here too, the "general allegations support each claim for relief and identify the relevant events, misrepresentations, and omissions advanced by the [Commission]" such that "[n]either the Court

nor Defendants have to sift through the allegations to see which ones support the cause of action purportedly stated . . . ." *Id.* Accordingly, the Court sees no reason to dismiss the Complaint on this basis.

### E. The Commission States a Claim Against Berbel in His Individual Capacity.

Lastly, Defendants contend that the Court must dismiss claims against Berbel in his individual capacity because the Complaint references only conduct Berbel engaged in as an officer and director of Fort Marketing Group. This argument overlooks allegations that Berbel misappropriated millions of dollars from company accounts to fund his extravagant personal life. The Commission alleges Berbel used corporate funds to buy his $1.25 million home, and spent almost $200,000 more on cosmetic surgery and gambling debts. If true, these allegations subject Berbel to personal liability because "equity will not allow a corporate veil to cover fraud or injustice, and to prevent such, the corporate entity may be disregarded and the corporation and individual or individuals owning all of its stock and assets treated as identical." *Sullivan v. Sullivan*, 54 So. 3d 520, 523 (Fla. Dist. Ct. App. 2010) (citing *Plank v. Arban*, 241 So.2d 198, 200 (Fla. 4th DCA 1970)). Accordingly, the Commission has pled sufficient facts to state a claim against Berbel in his individual capacity.

## IV. Conclusion

For the reasons discussed, it is ADJUDGED that Defendants' motion to dismiss is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 26 of February 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record